# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 14-264(1) (DWF/JJK) |
| | Civil No. 17-1726 (DWF) |
| Respondent-Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Tony Terrell Robinson, | |
| Petitioner-Defendant. | |

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant Tony Terrell Robinson's ("Petitioner-Defendant") *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. Nos. 121 & 128.) The United States of America (the "Government") opposes Petitioner-Defendant's motion. (Doc. Nos. 123 & 129.)

## BACKGROUND

Petitioner-Defendant alleges that his counsel was ineffective, asserting six grounds for relief. And, as observed by the Government, Petitioner-Defendant has added a seventh claim, which the Government asserts is untimely, pursuant to § 2255, in which he asserts that his trial counsel provided ineffective assistance of counsel because he allegedly advised him to seek release on bond, pending trial, rather than agree to remain in custody. (Doc. No. 128 at 3-4.) Petitioner-Defendant, in effect, claims that by being

on bond, he failed to receive credit for jail time he spent in state custody, and that he would have received such credit had he remained in federal custody on August 18, 2014.

First, Petitioner-Defendant argues that his trial counsel was ineffective because he did not raise a "disparity issue between" his sentence and co-defendant Tanka Tetzlaff's sentence. Secondly, Petitioner-Defendant asserts that his trial attorney failed to argue that his role assessment was overstated because he was "not in fact a leader but more of a manager." (Doc. No. 121 at 2.) Thirdly, Petitioner-Defendant asserts that his trial counsel was ineffective because he failed to ask for a continuance of the sentencing hearing in order to take advantage of guideline amendments that took effect on November 1, 2015. Fourthly, Petitioner-Defendant asserts that his trial counsel was ineffective because he was "ill during the time he was representing" Petitioner-Defendant and, as a result, "was not in his right mind to be representing a criminal defendant." Fifthly, in his petition to this Court, Petitioner-Defendant asserts that his trial counsel failed to object to the Government's intended loss argument. As to Petitioner-Defendant's appellate counsel, he asserts one claim of ineffective assistance by his appellate counsel by asserting that he should have alleged that his trial attorney provided ineffective assistance by not seeking a continuance of the sentencing hearing. For the reasons discussed below, the Court denies Petitioner-Defendant's motion.

## BACKGROUND

In August 2014, Petitioner-Defendant was indicted on Count 1 of the indictment with conspiring to file false tax refund claims with the IRS. In Counts 2 through 11 of the indictment, Petitioner-Defendant was charged with filing false tax refund claims.

As the Government has accurately explained in their submissions to the Court, and as the record will reflect, Petitioner-Defendant, while in prison at the Minnesota Correctional Facility ("MCF") in Faribault, he, along with a co-conspirator, Tanka Tetzlaff, operated an extensive tax fraud scheme by which they and other prisoners filed false income tax returns, fraudulently applying for tax refunds. *See* January 21, 2015 Robinson Presentence Investigation Report ("PSR") ¶¶ 9-10, 19-22; Doc. No. 85 § I(A). Petitioner-Defendant did not object to this factual account set forth in the PSR, as noted. Until Petitioner-Defendant was released in 2012, he continued to run the conspiracy from MCF-Faribault and from another prison, MCF-Stillwater. (PSR ¶¶ 14, 16, 21.) Petitioner-Defendant, along with co-defendant Tetzlaff, submitted over 500 tax returns for over a hundred inmates, making over $830,000 of false claims for tax refunds. PSR ¶¶ 9, 23. Petitioner-Defendant was responsible for all of these false claims and co-defendant Tetzlaff was responsible for about $694,000 of them. (PSR ¶ 23.) Petitioner-Defendant, along with Tetzlaff and other co-conspirators succeeded in stealing over $197,000 from the Internal Revenue Service ("IRS") through their tax fraud scheme. (PSR ¶ 23.)

During the time this conspiracy existed and the crimes Petitioner-Defendant pled

guilty to were occurring, he was concurrently serving three separate Minnesota state felony sentences. In October 2008, Petitioner-Defendant was convicted of first-degree criminal sexual conduct and sentenced to 91 months' imprisonment for those offenses which involved his niece while she was 7 to 12 years old. In March 2009, he was convicted of financial transaction fraud and sentenced to 15 months' imprisonment. Then, in April 2009, Petitioner-Defendant was convicted of identity theft and sentenced to one year and one day. (PSR ¶¶ 54-56.) On October 16, 2014, Petitioner-Defendant pled guilty pursuant to a plea agreement. He pled guilty to the conspiracy charge set forth in Count 1 and to the charge of filing a false claim with the IRS set forth in Count 3. Petitioner-Defendant and the Government, as part of the plea agreement, agreed to an adjusted total offense level of 23, which was based upon the base offense level of 20 for a tax loss between $500,000 and $900,000, along with a four-point role enhancement, a two-point enhancement for criminal livelihood, and a three-point reduction for acceptance of responsibility. (Doc. No. 50 ¶ 5.) The PSR came to the same conclusion, consistent with the specific terms of the plea agreement. (PSR ¶¶ 37-47.) Pursuant to the plea agreement, the parties believed that Petitioner-Defendant's criminal history category was a IV or V. The Probation Department found that Petitioner-Defendant had ten criminal history points which created a criminal history category of V, which was based upon three separate felony convictions and the fact that he committed the tax fraud offenses while serving his three felony sentences. (PSR ¶¶ 54-59.) At sentencing, Petitioner-Defendant argued that two of his felony convictions were related and his criminal history

category should therefore be IV.  Alternatively, Petitioner-Defendant argued to the Court and moved the Court to depart or vary downward based on an overstatement of his criminal history.  (Doc. No. 79 at 2-4; 1/20/15 Robinson Sentencing Transcript ("Robinson ST") 5-8, 9-11, 15-16, 32; U.S.S.G. § 4A1.3(b).)  The Government opposed Petitioner-Defendant's motion to depart, but did agree that the Court could evaluate and take account of any overstated criminal history when it determined the sentence pursuant to the § 3553(a) factors.  (Doc. No. 78 at 2-3; Robinson ST 9.)

On January 20, 2015, this Court sentenced Petitioner-Defendant to a term of 84 months imprisonment, which was the bottom of the applicable guideline range.  ST 43, 48; Doc. No. 84 at 2.

Petitioner-Defendant appealed his sentence asserting four claims.  First, he challenged this Court's denial of his motion for a downward departure based upon an overstatement of his criminal history.  Second, Petitioner-Defendant asserted that this Court failed to consider the alleged overstatement of his criminal history as a factor pursuant to § 3553(a).  Third, Petitioner-Defendant asserted that this Court erred by recommending that he be assigned to a prison with a Residential Drug Abuse program, as he had requested.  And fourth, Petitioner-Defendant asserted that his bottom-of-the-guidelines sentence was substantively unreasonable.  The Eighth Circuit Court of Appeals rejected his claims and affirmed this Court's decision in *United States v. Robinson*, 640 F. App'x 564, 566-67 (8th Cir. 2016) (per curiam; unreported).  The Eighth Circuit Court of Appeals declined to consider Petitioner-Defendant's claim for

ineffective assistance of counsel and affirmed the Court on all other issues raised by Petitioner-Defendant.

## DISCUSSION

**I.     Section 2255 Legal Standard**

As the Government has observed, Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence." In making such a motion, a § 2255 action requires a prisoner to show that he has the right to be released because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

It must be kept in mind that a § 2255 request for relief is extraordinary and "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Thus, contrary to a number of Petitioner-Defendant's assertions which will be addressed below, § 2255 does not encompass all claimed errors in conviction and sentencing." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

**II.    Ineffective Assistance of Counsel**

The United States Constitution guarantees that the accused "shall enjoy the right . . . to have the Assistance of Counsel" in criminal prosecutions. U.S. Const. amend. VI. To prevail on a claim for ineffective assistance of counsel under § 2255, however, a defendant must overcome a "heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). To overcome that burden, a defendant must first "show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must establish that the deficient performance actually prejudiced the defense. *Id.*

To establish that there was a deficient performance, the defendant must show that the errors were not the result of "reasonable professional judgment." *Id.* at 690. There is a strong presumption "that counsel . . . . rendered adequate assistance." *Id.* A defendant must prove, then, with "a probability sufficient to undermine confidence in the outcome," that "but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### A. Failure to raise disparity sentencing issue

The irony relating to Petitioner-Defendant's argument that his trial lawyer was constitutionally ineffective because he did not raise a "disparity issue between" his sentence and Tanka Tetzlaff's sentence is that Petitioner-Defendant was sentenced three months before co-defendant Tetzlaff was sentenced. For this reason alone, the Court respectfully denies Petitioner-Defendant's motion. However, the record before this Court

belies the notion that there was an unconstitutional disparity between Petitioner-Defendant's sentence and co-defendant Tetzlaff's sentence.[1]

### B. Failure to object to role enhancement

Petitioner-Defendant asserts that his trial lawyer failed to argue that his role enhancement was overstated because he was "not in fact a leader but more of a manager." (Doc. No. 121 at 2.) First, as observed by the Government, pursuant to the plea agreement, Petitioner-Defendant admitted a four-point leadership role was applicable for his "organizing role in the offense." (Doc. No. 70, ¶ 3.) Pursuant to the plea agreement, Petitioner-Defendant's counsel was prohibited from arguing that he was not an "organizer" for purposes of the advisory guideline enhancement. Moreover, Petitioner-Defendant's counsel did urge and ask the Court to grant a downward variance on numerous grounds, including his overstated role. Petitioner-Defendant's trial counsel was not ineffective on the basis of his failure to argue this role enhancement. This argument by Petitioner-Defendant is without merit.

### C. Failure to ask for a continuance of the sentencing hearing

Petitioner-Defendant asserts that his trial counsel was ineffective for failing to ask for a continuance of the sentencing hearing so that he could take advantage of guideline amendments that took effect on November 1, 2015. *See* U.S.S.G. § 2T4.1; U.S.S.G.

---

[1] Co-defendant Tetzlaff was sentenced on April 29, 2015. The advisory guideline range was 92 to 115 months and the Court, with a small downward departure, sentence Tetzlaff to 88 months.

amend. 791. As noted by the Government, a 2015 guideline amendment adjusted the tax loss table to account for inflation and an increase in tax loss amount required for a twenty-point base offense level from $400,000 to $1,000,000, up to $550,00 to $1,500,000. The amendment was not submitted to Congress until April 30, 2015. This Court would not have continued the sentencing for in excess of nine months in anticipation of this amendment going into affect. The irony in Petitioner-Defendant's assertion is that it would not have affected the outcome because the $830,000 tax loss amount triggered the twenty point base offense level, even under the amended guidelines section as well. (PSR ¶¶ 9, 23.)

### D. Trial counsel was ill

Petitioner-Defendant asserts that his trial counsel was "ill during the time he was representing the defendant" and, as a result, "was not in his right mind to be representing a criminal defendant." The trial record in this case and all submissions entirely belie this assertion by Petitioner-Defendant. However, whether trial counsel was in perfect health or feeling ill or under the weather, any assertion of ineffective assistance of counsel on this ground is without merit.

### E. Failure to object to Government's intended loss argument

The plea agreement that Petitioner-Defendant voluntarily and knowingly entered into stated that he agreed that the intended loss was between $500,000 and $900,000 and that the twenty-point base offense level applied. Based upon the record before this Court,

9

Petitioner-Defendant's assertion that his trial counsel was ineffective on this ground is without merit.

### F. Appellate counsel's failure to allege that trial counsel provided ineffective assistance by not seeking a continuance of the sentencing hearing

As discussed at II.C., there is no merit to this claim. As the Court previously noted, the $830,000 tax loss amount triggered the twenty-point base offense level, even under the amended guidelines section. (PSR ¶¶ 9, 23.) Moreover, this claim of ineffective assistance of counsel cannot be raised for the first time on appeal, as observed by the Government. Consequently, this assertion that his appellate counsel was ineffective on this ground is entirely without merit.

### G. Failure of trial counsel to request continued detention rather than release on bond

Even though the Court concurs with the Government that this seventh claim is untimely, the Court will nonetheless address this ground raised by Petitioner-Defendant.

Petitioner-Defendant did timely file his initial § 2255 motion on May 24, 2017. At that time, he made six claims and the Government filed its response on June 9, 2017. (Doc. No. 123.) On June 19, 2017, Petitioner-Defendant filed an amended § 2255 motion, (Doc. No. 123), and added a seventh claim of ineffective assistance of counsel. (Doc. No. 128 at 3-4.) Petitioner-Defendant also filed a motion asking the Court to accept the June 19 § 2255 motion and an affidavit in support. (Doc. Nos. 126-27.) These three documents were deposited with the prison mail system on June 14, 2017, twenty-six

days after the statute of limitations expired. (Doc. No. 126 at 2.) As the Court noted, it will nonetheless address the merits, even though the Court lacks jurisdiction to accept his June 19, 2017 § 2255 motion on the seventh ground.

The Government has accurately laid out the procedural history of this new claim.

The facts surrounding this new claim of Petitioner-Defendant are important. He was arrested on August 14, 2014, and had his first appearance the same day. Petitioner-Defendant pled guilty, as noted above, in the case before this Court on October 16, 2014. (Doc. Nos. 69-70.) After his plea was entered, this Court ordered him detained pending sentencing. (PT 57; Doc. No. 72.) During the plea hearing, the Government advised the Court that Petitioner-Defendant would not be receiving credit against his federal sentence for jail time that was credited against his state sentence of up to 120 days. (PT 45-46, 51-52.) Petitioner-Defendant's trial counsel also noted that Petitioner-Defendant would "ask for appropriate credit" at the sentencing in his case for time served on the state sentence. (PT 48-49, 53.) Importantly, this Court was well aware of the credit issue, in part, because it was not unique to Petitioner-Defendant's case and this Court indicated to both parties that the matter would be specifically addressed at sentencing: "I will deal with the credit for time served . . . ." (PT 57.)

As noted above, this Court sentenced Petitioner-Defendant on January 20, 2015. And, the Government again reminded the Court, both at the hearing and in its sentencing memorandum, that Petitioner-Defendant would not receive credit from the Bureau of Prisons for the 120 days he served on his state supervised release revocation sentence.

(Doc. No. 78 at 3.) At the sentencing hearing, Petitioner-Defendant's counsel asked the Court to account for this in its sentence because he would not be getting federal credit from the Bureau of Prisons for the time he was in custody from August to December 2016. (1/20/16 Sentencing Hr'g Tr. ('ST') 19; Doc. No. 112.) As accurately observed by the Government and as the record before this Court will reflect, that is exactly what this Court did. It sentenced Petitioner-Defendant to 84 months' imprisonment after taking into account the time he had spent in custody after charges were brought against him in the case before this Court. (ST 42-44, 55-58; *see* ST 57 ("I built that in.").) This Court, as it noted during the sentencing hearing, would have sentenced Petitioner-Defendant to more than 84 months if it had not taken that into account.

The record before this Court belies the notion in all respects that Petitioner-Defendant received ineffective assistance of counsel because his lawyer failed to request that he be detained rather than released. The motion submitted was untimely and, therefore, the Court has no jurisdiction to consider the merits of this, and it is denied on that ground. However, even if this matter would have been timely submitted and properly before the Court, for the reasons stated, the Court would have denied Petitioner-Defendant's motion for ineffective assistance of counsel on this ground.

### III. Evidentiary Hearing

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Petitioner-Defendant's claims. A § 2255 motion can be dismissed without a hearing when: (1) defendant's allegations, if accepted

as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Applying that standard to the Petitioner-Defendant's allegations and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## IV.  Certificate of Appealability

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

The Court has considered whether the issuance of a COA is appropriate. *See Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997). In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). The Petitioner-Defendant has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The record before this Court entirely forecloses any notion that Petitioner-Defendant received ineffective assistance of counsel under *Strickland* either at the trial level or at the appellate level. In fact, not only was there not any actual prejudice to Petitioner-Defendant, but, based upon the record before this Court, the Court cannot

13

envision any evidence that it could have received or excluded that would have changed Petitioner-Defendant's sentencing.

Based upon the presentations and the submissions of the parties, the Court having carefully reviewed the entire record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

1. Petitioner-Defendant Tony Terrell Robinson's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. Nos. [121], [128]) are respectfully **DENIED**.

2. Petitioner-Defendant Tony Terrell Robinson's Motion for Transcripts Pursuant to 28 U.S.C. § 753(f) (Doc. No. [132]) is **DENIED AS MOOT**.

3. Petitioner-Defendant Tony Terrell Robinson's Motion for Clarification on Motion for Transcripts Pursuant to 28 U.S.C. § 753(f) (Doc. No. [133]) is **DENIED AS MOOT**.

4. Petitioner-Defendant Tony Terrell Robinson's Motion to Stay Proceedings Motion to Strike (Doc. No. [135]) is **DENIED AS MOOT**.

5. Petitioner-Defendant Tony Terrell Robinson's Motion to Stay Proceedings Motion to Strike (Doc. No. [136]) is **DENIED AS MOOT**.

6. No evidentiary hearing is required in this matter.

7. No Certificate of Appealability will be issued to Petitioner-Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: August 23, 2017      s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge